UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re Subpoena of Paul Andre<br>MIDWEST ATHLETICS AND SPORTS ALLIANCES LLC,<br>        Plaintiff,<br>    v.<br>RICOH USA, INC.,<br>        Defendant. | Case No. 19-mc-80266-VKD<br><br>**ORDER RE MOTION TO QUASH SUBPOENA AND REMAINING PRIVILEGE OBJECTIONS** |

In this action, the parties dispute whether Paul Andre, counsel to Midwest Athletics and Sports Alliances LLC ("MASA"), should be required to produce documents and testify in response to a subpoena from Ricoh USA, Inc. ("Ricoh"). The Court has already resolved some aspects of this dispute. On December 9, 2019, the Court issued an order granting in part and denying in part Mr. Andre's motion to quash Ricoh's subpoena and denying Mr. Andre's motion for sanctions. Dkt. No. 28. In that order, the Court concluded that the proposed discovery of Mr. Andre must be limited to documents and testimony relating to four categories of information. *Id.* at 6-7. However, the Court concluded that it could not evaluate Mr. Andre's objections that such discovery was barred by the attorney-client privilege or the work product doctrine in the absence of a privilege log and some means to test Mr. Andre's objections. *Id.* at 7-8. Accordingly, the Court ordered Mr. Andre to provide a privilege log, and invited the parties to select up to 10 representative documents each for *in camera* review by the Court. *Id.*

After considering Mr. Andre's 45-entry privilege log and the parties' selection of documents for *in camera* review, the Court concluded that the documents at entries #1-25 were protected from disclosure by the attorney-client privilege. Dkt. No. 31 at 3. The Court was not

able to assess Mr. Andre's claim that the documents corresponding to entries #26-45 were protected from disclosure, and requested further briefing as to those matters. *Id.* at 3-4.

The parties submitted supplemental briefs and declarations in February 2020, and the Court held a hearing on March 3, 2020. Based on the parties' submissions and argument at the hearing, the Court concludes that no privilege or protection justifies Mr. Andre's withholding the documents corresponding to entries #26-45. In addition, the Court will permit Ricoh to take Mr. Andre's deposition, strictly limited to matters within the four categories of information outline in the Court's prior order.

## I. BACKGROUND

Entries #27-45 on Mr. Andre's privilege log correspond to infringement claim charts for certain patents currently owned by MASA and previously owned by Kodak, and now asserted against Ricoh in a patent infringement action pending in the Eastern District of Pennsylvania. *See Midwest Athletics and Sports Alliances LLC v. Ricoh USA, Inc.*, Case No. 2:19-cv-00514-JDW. The charts were prepared by attorneys employed by Mr. Andre's law firm, Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") in late 2016 for Kodak, whom Mr. Andre and Kramer Levin represented at the time. Dkt. No. 39-1, ¶ 2; Dkt. No. 47 at 8:17-9:25. After MASA acquired the patents from Kodak, the claim charts were shared with MASA. Dkt. No. 32-1, ¶ 3. Subsequently, MASA provided the claim charts to a "confidential funder" of MASA's operations pursuant to a non-disclosure agreement between MASA and the funder. *Id.*, ¶¶ 3-4.

Entry #26 on Mr. Andre's privilege log corresponds to an email from Geoff Thomas, MASA's President, to Mr. Andre and MASA's confidential funder, attaching the signed non-disclosure agreement between MASA and the funder. Dkt. No. 32 at 6.

Ricoh's subpoena to Mr. Andre also includes a request for deposition testimony, and Mr. Andre has raised objections to such testimony that mirror the objections he makes to Ricoh's document requests. *See id.* at 7-8.

## II. LEGAL STANDARDS

### A. Attorney-Client Privilege and Work Product Doctrine

The attorney-client privilege protects from discovery communications concerning legal

advice sought from an attorney in his or her capacity as a professional legal advisor, where the communication is made in confidence, is intended to be maintained in confidence by the client, and is not disclosed to a third party. *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002) (citing 8 John H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)). The privilege extends to confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citations and quotations omitted).

The work product doctrine protects from discovery materials that are prepared by or for a party or its representative in anticipation of litigation. Fed. R. Civ. P. 26(b)(3). Typically, the doctrine provides qualified protection against discovery of the legal strategies and mental impressions of a party's attorney. *Hickman v. Taylor*, 329 U.S. 495, 508-10 (1947); *Upjohn Co. v. United States*, 449 U.S. 383, 390-91 (1981).

Mr. Andre, as the party asserting attorney-client privilege and work product protection, bears the burden of proving that the privilege or protection applies. *See Ruehle*, 583 F.3d at 607-08; *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 514 (N.D. Cal. 2012).

### B.     Common Interest Doctrine

The voluntary disclosure of a privileged or protected document to a third party ordinarily waives that privilege or protection. *Ruehle*, 583 F.3d at 612; *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). The "common interest" or "joint defense" doctrine is an exception to ordinary waiver rules that applies when parties represented by separate counsel communicate, in confidence, about a matter of common legal interest, in furtherance of that common legal interest. *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). The doctrine does not create a privilege, but comes into play only if a privilege already covers the material disclosed to the third party. *Id.*; *see also Nidec. Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578-79 (N.D. Cal. 2007) (describing boundaries and application of common interest doctrine).

## III.   DISCUSSION

### A.   Entries 27-45:   Claim Charts

In his supplemental briefing, Mr. Andre asserts that the claim charts at entries #27-45 of the privilege log are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and the common interest privilege. Dkt. No. 32 at 4. The Court considers each asserted ground.

#### 1.   Attorney-client privilege

Although Mr. Andre contends that the attorney-client privilege protects the claim charts from disclosure to Ricoh, his privilege log and supplemental briefing do not support that contention. Nothing in the record indicates that Kramer Levin ever sent the claim charts or communicated their contents to Kodak, the client on whose behalf the charts were supposedly prepared. Mr. Andre's privilege log indicates only that the charts were provided to MASA's confidential funder. *See* Dkt. No. 33-9 at 3-7. And Mr. Andre's own declaration says merely that "[t]he infringement charts identified in Privilege Log Entries 27-45 were prepared *at the direction of Kodak*." Dkt. No. 39-1, ¶ 2 (emphasis added). Mr. Andre's opening supplemental brief devotes only one conclusory line to the assertion that the charts are privileged, s*ee* Dkt. No. 32 at 4:5-6, and his reply supplemental brief asserts, somewhat incongruously, that *Ricoh* (who would not know) does not dispute that the charts were provided to Kodak, *see* Dkt. No. 39 at 2.

In these circumstances, the Court concludes that Mr. Andre has not established that the claim charts were ever shared with Kodak, and therefore he has not established that they are protected from disclosure by the attorney-client privilege.

#### 2.   Attorney work product doctrine

Mr. Andre argues that the attorney work product doctrine protects the claim charts from disclosure because the charts "reflect the mental impressions of an attorney" and "contain the legal analysis carried out by MASA's counsel at Kramer Levin for the purpose of potential litigation." Dkt. No. 32 at 4. Ricoh argues that the work product doctrine does not apply because the claim charts were not prepared by Kramer Levin for Kodak in anticipation of litigation *by Kodak*. Dkt.

4

No. 34 at 10-11.[1]

The Court agrees with Ricoh. Although the claim charts do indeed reflect the legal analysis of an attorney, Mr. Andre has not shown that the charts were prepared for Kodak in anticipation of litigation. Rather, it appears that the charts were prepared for Kodak at a time when Kodak's sole objective was to monetize the patents by selling them to someone else. Ricoh points to evidence suggesting that Kodak wished only to sell the asserted patents and that it had no intention or plan to enforce them in litigation. Dkt. No. 34 at 10-11. Mr. Andre cites no testimony or other evidence suggesting Kodak contemplated possible litigation at the time Kramer Levin prepared the claim charts.

At the hearing, Mr. Andre argued that "there's no reason to prepare detailed infringement charts unless it's in anticipation of litigation activities." Dkt. No. 47 at 14:2-4. However, a patent holder might choose to have such charts prepared simply to assess whether its patents have value, or to assess the magnitude of that value based on the nature and extent of use of the claimed inventions. Preparation of charts for this purpose is entirely consistent with Kodak's efforts to sell the patents to another entity. In any event, there is simply no evidence in the record that the claim charts at issue were prepared in anticipation of litigation. Indeed, Mr. Andre acknowledges that Kodak never retained him and Kramer Levin to pursue litigation on Kodak's behalf. Dkt. No. 47 at 15:16-17. At most, he says that he hoped Kodak would retain him for litigation. *Id.* at 15:21-16:8.

As Mr. Andre has not shown that the claim charts were prepared for Kodak in anticipation of litigation, he has not established that the charts are protected attorney work product.

### 3. Common interest

Because Mr. Andre has not shown that the claim charts are protected from disclosure by the attorney-client privilege or the attorney work product doctrine the common interest doctrine

---

[1] Neither party disputes that the federal work product doctrine applies here, and not California's more permissive work product doctrine. *See Laguna Beach Cty. Water Dist. v. Superior Court*, 124 Cal. App. 4th 1453, 1461 (2004) (observing that "the federal work product doctrine is more limited than California's, with its protection extending only to documents 'prepared in anticipation of litigation or for trial....'") (citing Fed. R. Civ. P. 26(b)(3)).

does not provide an independent basis for withholding the charts from production. *See In re Pac. Pictures Corp.*, 679 F.3d at 1129.

In any event, the common interest doctrine does not apply when the interests shared in common are not legal interests but are merely business or financial interests. *Nidec,* 249 F.R.D. at 578-80 (discussing cases and observing that, properly applied, the common interest doctrine protects communications that further a joint legal interest, but does not protect communications that only further a joint business strategy). Here, Mr. Andre acknowledges that he disclosed the claim charts to MASA and to MASA's confidential funder. Neither of these parties shares a legal interest with Kodak, the party for whom Kramer Levin prepared the charts. Kodak did not retain any interest in the asserted patents after selling them to MASA and has no legal interests at stake in the Pennsylvania action against Ricoh. Dkt. No. 47 at 28:9-29:4 ("At the time they [Kodak] sold it [the patent portfolio], they walked away from it.") MASA's confidential funder likewise has no interest in the asserted patents, but has simply provided funding to MASA. *Id.* at 29:14-20. As neither MASA nor its confidential funder has any relevant legal interest in common with Kodak, the common interest doctrine would not shield any privileged or work product Kodak documents that were later disclosed to MASA or its funder.

### B.     Entry #26:  Email forwarding signed NDA

Mr. Andre asserts that Mr. Thomas's cover email forwarding to Mr. Andre the signed non-disclosure agreement between MASA and its confidential funder, and copying the confidential funder, is protected from disclosure by the attorney-client and the common interest privilege.[2] Dkt. No. 32 at 6. According to Mr. Andre, the agreement "outlines the expectations of confidentiality between [MASA and the funder], including the common interest privileges that are to be maintained, as well as the [sic] details the types of information that the parties may exchange." *Id.*

---

[2] Mr. Andre's privilege log relies cites attorney-client privilege and common interest privilege only for this entry. His supplemental briefing also refers to, but does not address, the attorney work product doctrine, but as this justification was raised for the first time in the supplemental briefing, and not developed further, the Court does not consider it.

1  The Court has reviewed this document *in camera* and can identify nothing in the cover
2  email or agreement that could conceivably qualify as privileged. As Mr. Andre explains, the
3  agreement governs the disclosure of confidential information between MASA and its funder, but
4  the agreement itself contains no communications seeking or providing legal advice. The message
5  in the cover email is actually addressed to the *funder* and not to Mr. Andre, and likewise contains
6  no communications seeking or providing legal advice.

7  MASA and its funder cannot simply agree that their communications are privileged, nor
8  can they agree that their agreement to do so is also privileged. The fact that MASA was advised
9  by counsel to enter into the agreement, or that its counsel drafted the agreement, does not make the
10 final agreement signed by both parties a privileged communication.

11 As neither the cover email nor the attached non-disclosure agreement is privileged, the
12 common interest doctrine does not apply.

### C. Deposition Testimony

The Court has already concluded that Ricoh's discovery from Mr. Andre must be limited to the following four categories of information:

1. how the patents for acquisition in the PPA were selected,
2. how the terms of the PPA were negotiated,
3. how the pricing terms and consideration for the patents in the PPA were determined, and
4. what representations were made to potential investors or funders regarding the patents and their value.

Dkt. No. 28 at 6. The Court also has already concluded that Mr. Andre likely has some, non-privileged, factual information within the scope of the four categories that other witnesses do not have. *Id.* at 7.

In his supplemental briefing, Mr. Andre says that he has no information about these topics, or that the information he has is protected by the attorney-client privilege, the attorney work product doctrine, and the common interest doctrine. Dkt. No. 32 at 7-8. Ricoh responds that the Court should require Mr. Andre to testify in deposition and should permit questioning that goes

7

beyond the four categories the Court has described. Dkt. No. 34 at 22-23.

The Court has resolved Mr. Andre's privilege objections with respect to Ricoh's document requests and has rejected Mr. Andre's contention that the only responsive information in his possession is privileged or protected. For this reason, the Court concludes that Ricoh may take Mr. Andre's deposition on matters within the scope of the four categories outline by the Court.

It is not practical for the Court to attempt to anticipate the many questions that may be posed to Mr. Andre within the scope of the four categories or to rule on privilege objections in advance. In this and prior orders, the Court has explained the contours and limitations of the attorney-client privilege, the attorney work product doctrine, and the common interest doctrine as applied to the documents on Mr. Andre's privilege log. These orders should serve as a guide for the parties in conducting the deposition. For example, Ricoh may not take testimony about the contents the documents the Court has concluded are privileged or otherwise protected from disclosure. *See* Dkt. No. 31 at 3. But Ricoh may take testimony about the contents of the documents withheld from production and listed as entries #26-45 on Mr. Andre's privilege log.

The Court denies Ricoh's request to revisit its prior decision precluding discovery of the other two matters about which Ricoh says it wants discovery—why Mr. Andre believed Mr. Thomas would be interested in acquiring patents from Kodak, and why Mr. Andre approached Kodak about acquisition of its patents. Ricoh may renew its request for this discovery if the presiding judge decides that MASA will be permitted to introduce evidence at trial highlighting or emphasizing the charitable and socially beneficial purposes for which MASA says it was created by Mr. Thomas.

**IV.   CONCLUSION**

For the reasons explained above, the Court orders as follows:

Mr. Andre must produce the documents corresponding to entries #26-45 on his privilege log. Ricoh may take Mr. Andre's deposition regarding matters within the scope of the four categories of information set forth above.

Mr. Andre will produce all remaining responsive, non-privileged documents by **May 8, 2020**. Mr. Andre's deposition shall be held within the next 30 days. If an in-person deposition

1   cannot be conducted within that time due to the current public health crisis and governmental
2   restrictions addressing the crises, Ricoh may postpone the deposition or may conduct the
3   deposition by videoconference or other means.
4   **IT IS SO ORDERED.**
5   Dated:   April 24, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge